People of the State of Illinois, Plaintiff-Appellee, v. Herbert McKinney (Impleaded), Defendant-Appellant.

**Gen. No. 53,924.**

First District, Second Division.

June 16, 1970.

Ellis B. Rosenzweig, of Chicago (Wexler, Kane & Rosenzweig, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

In a trial by the court without a jury, the defendant, Herbert McKinney, was found guilty of burglary (Ill Rev Stats 1967, c 38, § 19–1(a)). Judgment was entered, motion for a new trial was denied, and, following a hearing in aggravation and mitigation, the defendant was sentenced to three to seven years in the State Penitentiary. In this appeal he contends that: (1) the indictment is defective in that it fails to allege the street address of

the burglarized retail clothing store located in Chicago; (2) the record fails to show that the accused was advised of his right to a jury trial or that he waived that right; and (3) the State failed to prove, beyond a reasonable doubt, that the defendant intended to commit a theft when he entered the retail clothing store without authorization.

Testifying for the State were John Smith, manager of a Howard Clothes, Incorporated, retail clothing store in Chicago, and Sergeant Joseph Shaunnessey, one of the arresting officers. The defendant was the sole witness for the defense.

John Smith testified that at time of trial in October, 1968, he was the manager of a Howard Clothes store located at 6359 S. Halsted Street in Chicago but that on Friday, April 5, 1968, he was employed as the manager of a Howard Clothes retail store located at 3948 W. Madison Street in Chicago; that he closed the store at approximately 11:00 a. m. on that date; that he returned at 6:00 p. m. that evening, having been notified that the establishment had been burglarized, and spent one hour boarding up the store's large rear window which was 4' x 6' and located off an alley. The window had been broken and entry made into the store. Smith returned again at 10:00 a. m. on the following day, Saturday, April 6, 1968, and saw that all of the merchandise was now missing. The store was completely looted. In conclusion, Smith stated that he did not give the defendant permission to be in the store at 4:00 p. m. on that Saturday; that he never saw the accused in the store on Saturday; and that entry into the store could have been accomplished through the large rear window which he had not boarded up on Saturday because there was hardly anything of value left in the store on that day. He estimated that the merchandise taken had a total value of approximately $400,000. Easter was approaching and

the store, in anticipation, had a large inventory of clothes on hand. He also testified that when he left, sometime in the afternoon of Saturday, April 6, 1968, the store contained only mannequins, a floor buffer, and some sewing machines which were all still there when Smith returned the following Monday.

The defendant was not present during the testimony of Mr. Smith although one of his co-indictees, Jimmie Scott, was present in the courtroom. Scott had earlier waived trial by jury and personally consented to be tried by the court. Smith's testimony was offered against both the accused and Scott. The record reflects that the defendant was in the County Jail under the name of Dale McKinney, not Herbert McKinney, and this was the reason for his failure to appear in court on that one day.

After Smith had completed his testimony, the defendant's trial counsel who represented both Scott and McKinney, informed the court that his client would be present in court on the date to which the cause was to be continued. Trial counsel also stated that he was going to stipulate that the testimony given by Smith was to be admissible against his client, McKinney, although the defendant was absent when Smith had testified. The only reference to the defendant's waiver of a jury trial, however, was the following words spoken by his trial counsel, in the defendant's absence, and when counsel was referring to his stipulation regarding Smith's testimony: "He (the defendant) asked for a bench trial, and I think it is my prerogative to do this."

When this nonjury trial resumed twelve days later, the defendant was in the courtroom, and he personally agreed that Smith's testimony could be used against him, although he was absent from the courtroom at the time Smith had testified. No inquiry was made, however, as to the waiver of a jury trial by the accused. The common-law record does not contain any written jury waiver form signed by the defendant, and the report of pro-

ceedings does not include any conversation between the trial court, the defendant, and his appointed counsel regarding waiver of a jury.

Sergeant Joseph Shaunnessey, one of the arresting officers and a member of the Chicago Police Department, testified that at approximately 4:00 p. m. on Saturday, April 6, 1968, he and his two partners were assigned to the area of Madison and Pulaski and were patrolling the alleys behind that business area when they noticed a broken window in the rear of the Howard clothing store located at 3948 West Madison Street. They saw that the protective window bars had been pulled off, and several people were in the store itself. He and his two partners climbed through the broken rear window, and he saw that there was no merchandise on the shelves. All the mannequins in the front windows had been stripped of their garments except one which was wearing a sweater or a shirt. He and his partners found the defendant inside the store, behind one of the counters, and between the counter and the wall. The accused was not standing up at the time of his arrest and he was not visible until the police almost walked on top of the counter. He was apprehended approximately fifteen feet from the front window. Officer Shaunnessey did not see the defendant with any property when he was arrested.

The defendant, Herbert McKinney, testified that he was forty-one years of age at the time of trial and lived with his mother on the Southeast side of Chicago. On Saturday, April 6, 1968, he had consumed a pint of gin during the afternoon hours and happened to be on the west side of Chicago visiting a woman by the name of Sandra Thornton who was working in a record shop at Pulaski and Adams. He was arrested inside the Howard clothing store but stated that he entered the premises, by walking through the open rear door, out of curiosity, as he saw a number of people in the alley and six or seven milling around in the empty store. He joined them

343

out of curiosity and denied taking anything while in the store or having any such intention. He was inside the store for only two or three seconds before the police arrived. In conclusion, the accused stated that he had pleaded guilty to a burglary charge in 1953 and was released after serving two years in the penitentiary. According to his testimony, he was arrested while standing against a wall inside the store.

Initially, the defendant urges that the indictment is void because it fails to allege the street address of the retail store located in Chicago which was allegedly burglarized by the accused. This contention is based upon the testimony of Mr. Smith which indicated that Howard Clothes, Inc. had at least two retail stores in Chicago. The accused urges that the failure of the indictment to designate which store belonging to the corporation was involved in the case at bar resulted in his being deprived of his constitutional right to know the nature and cause of the accusation against him (Ill Const art 2, § 9) so that he could not fully prepare his defense and plead any judgment in bar of a subsequent prosecution for the same offense.

We note that the defendant did not bring the defect now complained of to the attention of the trial court by either a motion to dismiss the indictment [Ill Rev Stats 1967, c 38, § 114–1(a)] or by a motion in arrest of judgment [Ill Rev Stats 1967, c 38, § 116–2(a)]. The defect is raised for the first time in this reviewing court.

■ Defects in an indictment which are jurisdictional in nature may be raised for the first time in a court of review since no waiver by the defendant can give jurisdiction to the trial court. Among such jurisdictional defects would be the failure of an indictment, information or complaint to charge an offense [People v. Minto, 318 Ill 293, 149 NE 241 (1925); People v. Shaver, 367 Ill 339, 11 NE2d 400 (1937); and People v. Furman, 26 Ill2d 334,

344

186 NE2d 262 (1962)], or to allege venue [People v. Hill, 68 Ill App2d 369, 216 NE2d 212 (1966)]. The Illinois Code of Criminal Procedure has codified these judicial decisions. See Ill Rev Stats 1967, c 38, § 114–1(b). The issue presented to us, therefore, is whether the failure of the indictment to allege the street address of the burglarized retail store is a jurisdictional defect meaning that the defendant can raise this issue for the first time in a court of review.

In People v. Starr, 50 Ill App2d 399, 200 NE2d 118 (1964), and in People v. King, 50 Ill App2d 421, 200 NE2d 411 (1964), it was held that such a defect in a burglary indictment is not jurisdictional so that the failure of the defendant to file and argue, in the trial court, a motion to dismiss the indictment resulted in the waiver of the contention for purposes of appeal. This rule was followed in the later case of People v. Bremer, 57 Ill App 2d 436, 440–41, 206 NE2d 795 (1965), which held that such a defect in an indictment is only a mere irregularity and not jurisdictional, and in People v. Headrick, 65 Ill App2d 169, 212 NE2d 102 (1965).

■ We follow the reasoning of these cases and hold that the defendant waived his initial contention for purposes of appeal when he failed to bring it to the attention of the trial court. Our conclusion is not altered by the fact that, in the case at bar, testimony indicated that Howard Clothes, Inc. had at least two stores in Chicago, but the indictment failed to designate which store belonging to the corporation was involved in the instant prosecution. The defendant was not prejudiced by this omission since he proceeded to trial and presented his defense on the merits, indicating that he knew he was accused of burglarizing the West Madison Street store. Furthermore, the defendant is in no danger of double jeopardy since the address of the burglarized premises is contained in the record which may be introduced as

evidence in any subsequent prosecution for the same offense. See People v. King, 50 Ill App2d 421, 200 NE2d 411 (1964), and the cases cited therein.

■ We do agree, however, with the defendant's second contention that he was not advised regarding his right to a jury trial and therefore never understandingly waived this personal privilege in open court as required by the Illinois Code of Criminal Procedure [Ill Rev Stats 1967, c 38, § 103–6]. A duty is imposed upon the trial court to see that such a waiver is expressly and understandingly made, which judicial responsibility is not to be perfunctorily discharged. People v. Fisher, 340 Ill 250, 265, 172 NE 722, 728 (1930); People v. Surgeon, 15 Ill2d 236, 154 NE2d 253 (1958).

■ The instant record reveals that the defendant's co-indictee, Scott, properly waived his right to a jury trial in open court but that no questions were directed at McKinney or his appointed counsel at this time because McKinney was absent from the courtroom. Twelve days later, when this nonjury trial continued, McKinney was present in court, but he was not advised of his right to be tried by a jury. The common law record contains no jury waiver form signed by the defendant, and the report of proceedings contains no colloquy between the court and McKinney's appointed counsel, conducted in the presence of the accused, or between the court and the defendant personally concerning waiver of a jury. The only reference to a bench trial for McKinney occurred when he was not present in court and his counsel stated, in reference to a stipulation regarding Smith's testimony, that he thought he could so stipulate for McKinney since the latter wanted a bench trial. With the exception of this statement by his counsel, the record is entirely silent as to any waiver of a jury trial by McKinney.

The State contends that in People v. Sailor, 43 Ill2d 256, 253 NE2d 397 (1969), the Illinois Supreme Court

held that when defense counsel states that his client wishes to waive his right to a jury trial, the trial court is entitled to rely upon the professional responsibility of the attorney to protect the best interests of his client. They contend that defendant's presence or absence in open court when the jury waiver is made for him by his counsel, if it is handled in this way, is therefore immaterial. As we read Sailor, the presence of the accused in open court and the fact that she remained mute and did not object when her counsel, in that case, waived her right to be tried by a jury represent the very crux of the holding that she had understandingly waived such a right. She was said to have spoken and acted through her agent—her attorney. The court made it quite clear that the accused is bound, on the theory of agency, by the acts of his counsel done in his presence in open court and to which the defendant does not object.

■ We do not feel constrained to extend or expand Sailor to the extent requested by the State. In the instant case, the purported waiver of a jury by counsel for McKinney was not made in his presence and therefore People v. Sailor, 43 Ill2d 256, 253 NE2d 397 (1969), is not controlling. Waiver of the right to be tried by a jury cannot be presumed from a silent record. Boykin v. Alabama, 395 US 238, 243, 23 L Ed2d 274, 89 S Ct 1709 (1969). See too People v. Cowart, 51 Ill App2d 388, 201 NE2d 153 (1964), where a conviction was reversed because the record failed to affirmatively show that the defendant had expressly and understandingly waived his right to a trial by jury, and People v. Rambo, App Ct No. 53712 (opinion filed April 16, 1970), where a murder conviction was reversed and the cause remanded because the defendant was not advised of his right to a jury trial. In our opinion, the instant record is silent in this regard and hence the judgment must be reversed and the cause remanded for a new trial.

347

Since the defendant must be tried again, we refrain from expressing any opinion regarding the defendant's guilt or innocence and find it unnecessary to analyze the evidence relating to the defendant's contention that the prosecution failed to prove criminal intent beyond a reasonable doubt. People v. Ruffin, 406 Ill 437, 442, 94 NE2d 433, 436 (1950); People v. McCarthy, 313 Ill 303, 312, 145 NE 133, 137 (1924); People v. Schwartz, 3 Ill2d 520, 121 NE2d 758 (1954); and People v. Cook, 33 Ill2d 363, 371, 211 NE2d 374, 378 (1965).

Judgment reversed and cause remanded.

McCORMICK, P. J., and BURKE, J., concur.